IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TAMMY PORTER

      Plaintiff,

v.                           CIVIL ACTION NO. 1:18CV122
                                   (Judge Keeley)

M.W. LOGISTICS SERVICES, LLC,

      Defendant.


**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

      This is an action for sexual harassment and retaliation in
violation of the West Virginia Human Rights Act, W. Va. Code §§ 5-
11-1, <u>et seq</u>. Pending before the Court is the defendant's motion
for summary judgment. For the reasons that follow, the Court **GRANTS**
the motion (Dkt. No. 31), and **DISMISSES** the case with prejudice.

<u>I. BACKGROUND</u>

**A.   Porter and Eastham's Agreement**

      Since February 2014, the plaintiff, Tammy Porter ("Porter"),
has owned and operated Porter's Grinds and Finds, a brick-and-
mortar restaurant and gift shop located in West Union, West
Virginia (Dkt. No. 32-2 at 2-3). The defendant, M. W. Logistics
Services, LLC ("M.W. Logistics"), provides employee services to
MarkWest Energy Partners L.P. ("MarkWest") and its subsidiaries and
affiliates (Dkt. No. 32-1 at 1). Markwest, a midstream services
company, is the largest processor of natural gas in the Marcellus

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

Shale. Id. Markwest operates its Sherwood Processing Facility (the "Facility") near West Union. Id. at 2. The Facility consists of several individual processing plants, all of which are located on the same site. Id. The construction of additional processing plants at the Facility was ongoing during all relevant times.

Sometime in 2016, the Facility's Production Manager, Randall Eastham ("Eastham")[1], dined at Porter's restaurant. Id. at 7. While Eastham dined, he and Porter discussed the possibility of Porter placing a mobile food trailer at the Facility for the purpose of providing food to the many construction contractors on site. Id. at 7-8. Shortly thereafter, Porter met Eastham in his office to discuss the details of the arrangement. Id. at 8-9. During that meeting, Eastham told Porter that she could park her food trailer near a security gate at the entrance of the Facility, downhill from the processing plants, and that MarkWest would provide electricity to the trailer. According to Porter, Eastham "didn't want a dime" in exchange for providing her access to the Facility because he was "happy [that she would] be providing a service to the contractors" on site. Id. at 11. Porter and Eastham's verbal agreement was not reduced to a written contract.

---

[1] The parties agree that Porter misstates Eastham's surname as "Eastman" throughout the complaint.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

At the time Eastman granted Porter access to the Facility, seven (7) processing plants were operational and an eighth plant ("Sherwood #8") was under construction (Dkt. No. 32-1 at 2). The Facility's construction plan called for building a single processing plant to completion, making it operational, and then moving to a different portion of the site to begin construction on the next plant. Id. All construction-related activities at the Facility were managed by an employee of M.W. Logistics, Kevin Sturgill ("Sturgill"). Id. Eastham, meanwhile, was responsible for the management of processing plants actually in operation. Id.

Shortly after Porter's arrangement with Eastham became known to the construction contractors, they requested that she be permitted to place her food trailer at the top of the hill, closer to their construction activities (Dkt. No. 32-1 at 3). Because the contractors had only thirty (30) minutes for lunch, they did not believe they would have sufficient time to walk down the hill, purchase food, and return with enough time to eat their meal. Id. To accommodate the contractors' request, MarkWest[2] allowed Porter to move her trailer to the top of the hill, where a number of other

---

[2] The parties sometimes use the term "MarkWest" to refer to MarkWest Energy Partners L.P. and its subsidiaries, including M.W. Logistics, collectively. The Court will refer to each entity as reflected by the record before it.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

contractors' mobile trailers were already located. Id.; see also Dkt. No. 32-2 at 21-22. When Porter placed her trailer at this location, she was physically closest to Sherwood #8, which remained under construction (Dkt. Nos. 32-1 at 3; 32-2 at 23).

## B.  Ongoing Construction at the Facility

Federal and state safety regulations require MarkWest to account for the potential of an explosive event at the Facility by implementing certain safety requirements, including the delineation of a "blast zone" based on physical proximity to potential ignition sources, such as natural gas (Dkt. No. 32-1 at 3-4). Safety regulations require that structures intended for human occupancy and physically located within the delineated blast zone be "blastproof." Id. at 4. A blastproof structure is manufactured to withstand certain forces that would exist in the event of an explosive event, in order to protect human life. Id.

Because Sherwood #8 was not yet operational at the time Porter placed her trailer at the top of the hill, there was no potential ignition source (natural gas) flowing through it (Dkt. Nos. 32-1 at 4). Therefore, the trailers located at the top of the hill were not within a delineated blast zone (Dkt. No. 32-1 at 4). Upon Sherwood #8 becoming operational, however, there would be no location within the Facility that was not within a blast zone, based on physical

4

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

proximity to an ignition source. Id. Accordingly, Sturgill, through
his assistant, Christina Wolfgang ("Wolfgang"), notified Porter and
the construction contractors that, upon the completion of Sherwood
#8, they would have to rent blastproof trailers in order to remain
on site. Id.; Dkt. No. 32-3 at 1.

Porter testified during her deposition that, no later than
September 2017, she knew that she would be required to obtain a
blastproof trailer in order to remain on site once Sherwood #8
became operational in early 2018 (Dkt. No. 32-2 at 26-32). During
the autumn of 2017, Wolfgang had at least four or five additional
conversations with Porter about the need to either move her
existing trailer or procure a blastproof trailer (Dkt. No. 32-3 at
2). According to Wolfgang, she informed Porter that, if she did not
wish to obtain a blastproof trailer, she could move her trailer
back down the hill and place it near the security gate. Id. As of
January 2018, Porter had not acquired a blastproof trailer. Id.

**C.    Eastham's Text Messages to Porter**

On the morning of January 13, 2018, Eastham sent Porter a text
message requesting that she deliver six pizzas to the Facility for
lunch (Dkt. No. 33-2 at 1). Porter responded that she would deliver
the pizzas and stated, "Anything for Randall." Id. at 1-2. Her

PORTER V. M.W. LOGISTICS SERVS., LLC                    1:18CV122

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

message included a smiley face emoji.[3] <u>Id.</u> at 2. In response, Eastham sent Porter a series of text messages stating, "I have an empty office," "I'm in my office alone," and "You said anything." <u>Id.</u> at 2-3. Because Eastham's statements made her uncomfortable, Porter asked him to call another company to deliver the pizzas. <u>Id.</u> at 3. The next morning, Porter texted Eastham, "Randall, Maybe I have sent you the wrong msg [sic]. I am sorry if I did. I am in serious relationship with Duane. I don't want this to change our working relationship." <u>Id.</u> at 4. Eastham responded, "Not at all, 100% joke, we've always joked, My bad." <u>Id.</u> at 5.

Ten days later, on January 24, 2018, Porter received a Facebook message from Wolfgang, which stated, "Hey [T]ammy, [K]evin [Sturgill] said to let you know that your trailor [sic] needs to be mov[ed] out by tomorrow. Please let us know who is coming to get it" (Dkt. No. 32-6). Although her message to Porter did not specifically mention the blast zone, Wolfgang states in her declaration that Sturgill had instructed her to inform Porter that her trailer "needed to be moved from the blast zone" (Dkt. No. 32-3 at 2). In response to Wolfgang's message, Porter stated, "Tomorrow?!? Let me c [sic] what I can pull off" (Dkt. No. 32-6).

---

[3] An emoji "is a pictograph included in a text message." <u>Doe v. W. New Eng. Univ.</u>, 228 F.Supp.3d 154, 163 n.7 (D. Mass. 2017).

Porter listed her trailer for sale on Facebook the same day (Dkt. No. 32-7). According to Sturgill, he had no knowledge of any text message exchange between Porter and Eastham at the time he instructed Wolfgang to inform Porter to move her trailer from the blast zone (Dkt. Nos. 32-1 at 5).

Four days later, on January 28, 2018, Eastham sent an email to his administrative assistant, Autumn David ("David"), asking her to plan a catered lunch event at the Facility and directing that she "not [use] [P]orters" (Dkt. No. 33-3). When David further inquired about the catering, Eastham responded, "I'm finished with Tammy Porter, we won't be supporting her out of Sherwood's budget." Id. The following day, January 29, 2018, Porter received a series of text messages from David, which stated, "I need you to arrange to get the pop machine and the camper off site this week. No clue why. Was just told to ask you." (Dkt. No. 33-4). When Porter asked whether Eastham had given the directive, David confirmed that he had. Id.

D.    **Procedural Background**

On April 25, 2018, Porter sued MarkWest Energy Partners, L.P. in the Circuit Court of Harrison County, West Virginia, asserting claims of (1) sexual harassment in violation of the West Virginia Human Rights Act ("WVHRA"), and (2) malicious, willful, wanton, and

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

reckless misconduct. Shortly thereafter, on May 7, 2018, Porter filed an amended complaint to change the name of the corporate defendant to M.W. Logistics (Dkt. No. 1-1). On May 25, 2018, M.W. Logistics timely removed the case to this Court (Dkt. No. 1).

Following removal, M.W. Logistics moved to dismiss Porter's Amended Complaint for failure to a state a claim (Dkt. Nos. 4; 5). During a scheduling conference on August 24, 2018, the Court granted the motion to dismiss, in part, but denied the motion to dismiss Porter's claim for sexual harassment under the WVHRA (Dkt. No. 5). Porter thereafter filed a Second Amended Complaint on August 30, 2018, asserting separate causes of action against M.W. Logistics for sexual harassment and retaliation under the WVHRA (Dkt. No. 19).

Now pending is M.W. Logistics' motion for summary judgment (Dkt. No. 31), which is now fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court reviews all the evidence

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

"in the light most favorable" to the nonmoving party. <u>Providence
Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir.
2000). "Summary judgment cannot be granted merely because the court
believes that the movant will prevail if the action is tried on the
merits." <u>Jacobs v. N.C. Admin. Office of the Courts</u>, 780 F.3d 562,
568 (4th Cir. 2015) (citation omitted). The Court must therefore
avoid weighing the evidence or determining its truth and limit its
inquiry solely to a determination of whether genuine issues of
triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
249 (1986).

The moving party bears the initial burden of informing the
Court of the basis for the motion and of establishing the
nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 323 (1986). Once the moving party has made the
necessary showing, the non-moving party "must set forth specific
facts showing that there is a genuine issue for trial." <u>Anderson</u>,
477 U.S. at 256 (internal quotation marks and citation omitted).
The "mere existence of a scintilla of evidence" favoring the non-
moving party will not prevent the entry of summary judgment; the
evidence must be such that a rational trier of fact could
reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

---

### III. DISCUSSION

**A.    Sexual Harassment Claim**

In Count One of the Second Amended Complaint, Porter alleges a claim for quid pro quo sexual harassment, in violation of the WVHRA (Dkt. No. 19 at 3-5).

"Under the West Virginia Human Rights Act, W. Va. Code §§ 5-11-1, <u>et seq.</u>, it is unlawful '[f]or any employer to discriminate against an individual with respect to . . . tenure, terms, conditions or privileges of employment[.]'" <u>Ford Motor Credit Co. v. W. Virginia Human Rights Comm'n</u>, 696 S.E.2d 282, 292 (W. Va. 2010) (quoting W. Va. Code § 5-11-9(1)). The Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals") has consistently "recognized sexual harassment as an independent basis for stating a Human Rights Act claim." <u>Conrad v. ARA Szabo</u>, 480 S.E.2d 801, 810 (W. Va. 1996) (citing <u>Hanlon v. Chambers</u>, 464 S.E.2d 741, 748-50 (W. Va. 1995); <u>Westmoreland Coal Co. v. W. Va. Human Rights Comm'n</u>, 382 S.E.2d 562 (W. Va. 1989)). The form of sexual harassment alleged in this case, "quid pro quo" sexual harassment, "involves an employer or its agent demanding sexual consideration in exchange for job benefits." <u>Conrad</u>, 480 S.E.2d at 810 n.4 (citations omitted).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

In order to set forth a <u>prima</u> <u>facie</u> case of quid pro quo sexual harassment, a plaintiff must establish, by a preponderance of the evidence, that: (1) she belongs to a protected class; (2) she was subject to an unwelcome sexual advance by an employer or an agent of the employer who appears to have the authority to influence vital job decisions; and (3) her reaction to the advancement was expressly or impliedly linked by the employer or the employer's agent to tangible aspects of employment. Syl. pt. 1, <u>Gino's Pizza of W. Hamlin, Inc. v. W. Virginia Human Rights Comm'n,</u> 418 S.E.2d 758, 759 (W. Va. 1992) (citing <u>Westmoreland</u>, 382 S.E.2d at 566–67).

Here, Porter has clearly established the first element of her sexual harassment claim. She is a female, and accordingly, a member of the protected class. At issue are the second and third elements of Porter's <u>prima</u> <u>facie</u> case. M.W. Logistics argues that, even if Porter was subject to an unwelcome sexual advance by Eastham, neither he nor M.W. Logistics had the authority to influence vital job decisions or the ability to affect tangible aspects of her employment (Dkt. No. 31). Porter contends, however, that M.W. Logistics, through Eastham, affected her employment opportunities by eliminating her ability to sell food on the Facility's premises (Dkt. No. 33).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

As an initial matter, it is undisputed that M.W. Logistics is an "employer"[4] under the WVHRA. It is also undisputed that Porter was not employed by M.W. Logistics (Dkt. No. 32-2 at 3-4). Rather, Porter was a self-employed individual who sold food to construction workers on M.W. Logistics' work site as "a leg of" her own brick-and-mortar restaurant. The Supreme Court of Appeals has made clear that § 5-11-9(1) of the WVHRA "prohibits any person who is an employer from discriminating against any 'individual' regarding his or her employment opportunities irrespective of whether the individual is an employee of or seeks work with that employer." Syl. pt. 8, <u>Conrad v. Ara Szabo</u>, 480 S.E.2d 801 (W. Va. 1996); <u>see also</u> Syl. pt. 4, <u>Constellium Rolled Prod. Ravenswood, LLC v. Griffith</u>, 775 S.E.2d 90, 93 (W. Va. 2015) (citing Syl. pt. 8, <u>Hanlon</u>, 464 S.E.2d at 745) ("The West Virginia Human Rights Act . . . imposes a duty on employers to ensure that workplaces are free of sexual harassment from whatever source.").

---

[4] Under the Act, the term "employer" includes "any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year." W. Va. Code § 5-11-3(d). The term "person," in turn, "means one or more individuals, partnerships, associations, organizations, corporations, . . . and other organized groups of persons." <u>Id.</u> § 5-11-3(a).

In <u>Conrad</u>, the plaintiff sued, among others, the West Virginia Regional Jail Authority ("Jail Authority") for sexual harassment and retaliatory discharge in violation of the WVHRA. She alleged that, while working in the kitchen at Eastern Regional Jail ("Jail"), she had been subjected to sexual harassment by Jail employees, and that she had been terminated after complaining about the harassment. <u>Conrad</u>, 480 S.E.2d at 806-08. Although actually employed by a private corporation that provided food services to the Jail, the plaintiff contended that the Jail Authority could be sued for sexual harassment under the WVHRA because (1) it was "an employer" under the Act, and (2) its employees had discriminated against her, "an individual," by permitting a sexually hostile work environment and by effecting her termination from her employer, the food services company. <u>Id.</u> at 815. The Jail Authority disagreed, contending that § 5-11-9(1) reaches only discrimination by an employer against its employees or applicants for employment. Thus, it argued that it could not be liable to the plaintiff under that section because it was not her employer; rather, she was employed by the food services company. <u>Id.</u>

"Bearing in mind § 5-11-15's admonition of calling for a liberal interpretation of the Act," the Supreme Court of Appeals concluded that the plaintiff's interpretation is the preferred one.

13

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

Id. at 816. In reaching that conclusion, the court first noted that the plaintiff's interpretation permitted the statute to be given its literal meaning: "§ 5-11-9(1) says that an employer shall not discriminate against 'an individual'; it does not say against 'an employee or applicant.'" Id. (emphasis omitted). It further concluded that the plaintiff's interpretation "better promotes the purpose of the statute, which is, of course, to guarantee equal opportunity to all persons regardless of their gender . . . ." Id. Finally, the court observed that "no reason exists to insulate an employer from liability if it **obstructs the employment opportunities** of any individual because of her gender even if she works for, or seeks work with, some other employer." Id. (emphasis added). Accordingly, the court held that the plaintiff should be given an opportunity on remand to prove that the Jail Authority caused her to suffer a hostile working environment because of her sex, and caused her to lose her job because of her sex or her opposition to sexual harassment. Id.

Thus, in some circumstances, it is possible for an entity that is not an individual's employer to be held liable for discrimination under the WVHRA. For such liability to exist, however, the entity must "obstruct[] the employment opportunities" of the individual. Id. at 816. As in Conrad, here also the

14

defendant-company is "an employer" and the plaintiff-worker is "an individual" who was not employed by that company. In both cases, the plaintiff worked on site at the defendant's place of business, where, in the course of performing her work, she was allegedly harassed by person(s) employed by the defendant. There, however, the similarities end.

Critically, the WVHRA prohibits discriminatory practices related to employment:

It shall be an unlawful discriminatory practice . . .:

> (1) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges **of employment** ... .

W. Va. Code § 5-11-9(1) (emphasis added); see also id. § 5-11-2 ("It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment ... ."). Thus, while the WVHRA plainly protects "individual[s]" from unlawful discrimination, it nonetheless requires that the discrimination in question relate to that individual's employment.

Unlike the plaintiff in Conrad, whose termination from her employer was effected by the defendant, Porter's *employment* was not terminated or otherwise obstructed by M.W. Logistics. During her deposition, Porter testified that she was not, and has never been,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

an employee of M.W. Logistics (Dkt. No. 32-2 at 3-4). Rather, Porter was "the owner and sole proprietor" of her own business, Porter's Grinds and Finds. Id. at 18. Most significantly, Porter testified during her deposition that M.W. Logistics had no ability whatsoever to terminate or otherwise affect her employment with Porter's Grinds and Finds:

> Q: And to be very clear, as the owner of that business, nobody could tell Porter's to fire you; could they?
>
> A: Nobody could tell Porter's to fire me, no.
>
> Q: No, that's not true? Or no, that couldn't happen?
>
> A: Nobody could tell Porter's to fire me. No. No one could – no one could fire me. Correct.
>
> Q: Right. Because you are the owner and sole proprietor of that business; true?
>
> A: Correct.
>
> Q: You are the final decision-maker; correct?
>
> A: Correct.
>
> . . .
>
> Q: Yeah. Is there any – is there even a single person in the entire world that could tell Porter's Grinds and Finds that you weren't allowed to be associated with that entity?
>
> A: No.
>
> Q: Is there a single person in the world that could tell Porter's Grinds and Finds that it wasn't allowed to provide revenue to you as the sole owner of the business?

A: No.

Id. at 17-19.

Thus, based on her own admissions, it is undisputed that M.W. Logistics could not have "obstruct[ed] the employment opportunities of" Porter or otherwise discriminated against her "regarding . . . her employment opportunities." Conrad, S.E.2d at 816; 801. Therefore, even when drawing all reasonable inferences in her favor, M.W. Logistics could not have discriminated against Porter with respect to the "tenure, terms, conditions or privileges of [her] employment" at Porter's Grinds and Finds, in violation of the WVHRA. See W. Va. Code § 5-11-9(1).

Moreover, to the extent that Porter contends that M.W. Logistics obstructed her employment opportunities by eliminating her ability to sell food at the Facility, Dkt. No. 33 at 8-9, that argument is unavailing. Although Porter's inability to park her mobile food trailer on the Facility's premises may have "affected her ability to earn an income" by selling food to a particular customer base, a lost business opportunity does not equate to a lost *employment* opportunity. As discussed earlier, Porter admitted during her deposition that M.W. Logistics could not accomplish her termination from Porter's Grinds and Finds or otherwise affect the terms or conditions of her employment. See Dkt. No. 32-2 at 15-19.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

Thus, when the evidence is viewed in the light most favorable to Porter, as it must be, the Court concludes that she has failed to offer sufficient evidence that her reaction to Eastham's alleged sexual advance was linked by M.W. Logistics, or Eastham, to tangible aspects of Porter's employment so as to withstand summary judgment.[5] Having failed to demonstrate the requisite link to her employment, Porter has failed to establish a <u>prima facie</u> case of quid pro quo sexual harassment under the WVHRA.

**B.     Retaliation Claim**

In addition to her sexual harassment claim, Porter alleges in Count Two that M.W. Logistics retaliated against her when she "rebuffed Eastman's [sic] advances and opposed his overtures," in violation of the WVHRA (Dkt. No. 19 at 5-8).

Under West Virginia law, Porter must establish the following elements to state a <u>prima facie</u> claim for unlawful retaliation: (1) she was engaging in protected activity; (2) her employer was aware of the protected activity; (3) her employer took adverse action

---

[5]  The Court recognizes that a genuine dispute of material fact exists as to the reason why M.W. Logistics revoked Porter's access to the Facility, and whether that revocation was due, at least in part, to her rebuke of Eastham's alleged sexual advance. Nevertheless, Porter cannot demonstrate that any alleged gender discrimination by M.W. Logistics, or its agent, affected the compensation, hire, tenure, terms, conditions, or privileges of her employment, as required to establish a violation of the WVHRA.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

against her; and (4) the adverse action was retaliatory or, in the absence of such evidence, was sufficiently temporally related to the protected activity to allow an inference of retaliatory motive on the part of the employer. Syl. pt. 10, <u>Hanlon v. Chambers</u>, 464 S.E.2d 741, 753 (W. Va. 1995) (citing Syl. pt. 1, <u>Brammer v. Human Rights Comm'n</u>, 394 S.E.2d 340 (W. Va. 1990)).

At issue is whether Porter engaged in a "protected activity" within the meaning of the Human Rights Act. Under the WVHRA, it is unlawful for an employer to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he has opposed any practices or acts forbidden under this article or because he has filed a complaint, testified or assisted in any proceeding under this article." W. Va. Code § 5-11-9(7)(C). The Supreme Court of Appeals has interpreted such protected activity to include "that which challenges any practices or acts forbidden under" the statute. <u>Hanlon</u>, 464 S.E.2d at 753 (internal quotations omitted). In <u>Hanlon</u>, the Supreme Court of Appeals explained that the WVHRA prohibits

> an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the Human Rights Act. This standard has both an objective and a subjective element. **The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal**

PORTER V. M.W. LOGISTICS SERVS., LLC                1:18CV122

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE

**theory that are plausible.** Further, the view must be
honestly held and be more than a cover for troublemaking.

Id. at 754 (emphasis added); see also Conrad, 480 S.E.2d at 813
(apply the same definition of protected activity). It further
commented that "[t]he legislative purpose in including the
anti-retaliation provision was obviously to encourage people to
come forward and expose **unlawful employment practices** and to do so
without fear of reprisal." Id. (emphasis added). Thus, to have
engaged in "protected activity," Porter must have challenged or
otherwise opposed conduct that she reasonably and in good faith
believed unlawful under the WVHRA.

Here, Porter has failed to demonstrate that she engaged in any
such activity. As discussed earlier, Porter testified during her
deposition that M.W. Logistics was not her employer; that she was
the "final decision-maker" with regard to her business and her
employment at Porter's Grinds and Finds; and that neither M.W.
Logistics nor Eastham had the ability to terminate her or to
otherwise affect any tangible aspect of her employment. See Dkt.
No. 32-2 at 3-4; 17-19. Therefore, the Could concludes, as a matter
of law, that Porter could not have reasonably believed that she was
opposing an unlawful employment practice when she rebuffed
Eastham's alleged sexual advance.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 31] AND DISMISSING CASE WITH PREJUDICE**

---

### IV. CONCLUSION

In conclusion, for the reasons discussed, the Court **GRANTS** M.W. Logistics' motion for summary judgment (Dkt. No. 31), and **DISMISSES** this case **WITH PREJUDICE.**

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: August 23, 2019

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE